IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLONY INSURANCE COMPANY,

 Plaintiff,

v.               Civil No.: BPG-17-727

R & P AUTOMOTIVE, LLC, et al.,

 Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Colony Insurance Company ("Colony," or "plaintiff") brings this action seeking a declaratory judgment that its insurance policy with defendant R & P Automotive, LLC ("R&P") is void *ab initio*, of no force and effect, and properly rescinded. (ECF No. 42 at 3). Plaintiff joined as defendants Rose Tamaris, Master Systems Automotive, Inc. ("Master"), Matthew Anders, and Main Street America Assurance Company ("Main Street"). (ECF No. 42 at 4–5). Currently pending before the court are: (1) Defendant Matthew Anders' Motion for Summary Judgment ("Anders' Motion") (ECF No. 77); (2) Defendants Master, R&P, and Rose Tamaris' Joint Motion for Summary Judgment ("R&P Group's Motion") (ECF No. 78); (3) Defendant Main Street's Motion for Summary Judgment Joining R&P's Motion for Summary Judgment ("Main Street's Motion") (ECF No. 79); (4) Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendants' Motions for Summary Judgment ("Plaintiff's Motion") (ECF No. 80); (5) Defendant Matthew Anders' Reply to Plaintiff's Response to His Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment ("Anders' Reply") (ECF No. 81); (6) Defendants Rose Tamaris, Master, and R&P's Opposition to

Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("R&P's Reply") (ECF No. 83); (7) Defendant Main Street's Response to Plaintiff's Motion for Summary Judgment ("Main Street's Reply") (ECF No. 85); and (8) Plaintiff's Reply to Defendants' Responses Regarding Motions for Summary Judgment ("Plaintiff's Reply") (ECF No. 86). A hearing was held on October 24, 2018. (ECF No. 88). For the reasons stated below, Plaintiff's Motion (ECF No. 80) is GRANTED in part and DENIED in part and Anders' Motion (ECF No. 77), the R&P Group's Motion (ECF No. 78), and Master's Motion (ECF No. 79) are GRANTED in part and DENIED in part.

I. **BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). When the parties have filed cross-motions for summary judgment, in "considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

In 2012, Rose Tamaris formed R & P Automotive, LLC ("R&P"). (ECF No. 78-2). R&P provided auto detailing services, primarily for DARCARS at DARCARS' Honda dealership location in Bowie, MD. (ECF No. 77-3 at 6). Mrs. Tamaris' late husband, Andreas Tamaris, owned another entity, Master Systems Automotive, Inc. ("Master"), which also provided auto detailing services, but primarily for DARCARS at DARCARS' Lexus of Silver Spring location. Id. In 2015, Mrs. Tamaris acquired full ownership of Master from Mr. Tamaris.

2

(ECF Nos. 77-3 at 6–7, 78-4). Mrs. Tamaris also owned a third entity, East Coast Automotive, LLC ("East Coast"), another auto detailing business. (ECF No. 77-3 at 4–5).

In 2013, Mrs. Tamaris applied for insurance from plaintiff for R&P with the assistance of insurance agent Jon Christiana of C&E Insurance and Financial Services. (ECF No. 78-5). On the insurance application, under the heading "Applicant Information," "R & P Automotive, LLC" is listed under "Business Trade Name." (ECF No. 78-6 at 1). The business entity is identified as an "LLC" and operations are described as "auto detailer." Id. Question three asked "are you involved in any additional business operations other than what is described above?" and the box marked "No" is checked. Id. Question 10, titled "Rating Exposure Basis," directed the applicant to "list ALL Owners, Employees and Drivers." (ECF No. 78-6 at 2). The sole party listed in response is Rose Tamaris, described as "Owner/Operator." Id. On the last page of the application, Rose Tamaris signed above a line "Applicant's Signature" and below a declaration stating "I declare to the best of my knowledge that all statements herein are true and no material facts have been suppressed or misstated. I am also aware that my operation may be inspected by the Insurance Company." (ECF No. 78-6 at 5).

Plaintiff issued a policy of garage coverage insurance to R&P for a year starting in October of 2013 and renewed this policy for a year starting in October of 2014. (ECF No. 78-1 at 4). In July 2015, plaintiff paid a claim for property damage to a vehicle caused by one of R&P's workers. (ECF No. 78-1 at 5). On October 16, 2015, R&P submitted a renewal application for insurance. (ECF No. 78-1 at 6). On this application, Question 16 asked about prior claims history. (ECF No. 78-7 at 2). A box for "Losses Reported in Last 36 months" was checked and "Tristate has all information" was written under "Date of Loss, Amount," and "Description of Loss." Id. Additionally, in this application, Question 5 was reworded slightly

3

and asked "Do you have an ownership interest in or operate any other business?" Id. The box for "No" was checked. Id. Rose Tamaris signed her name on the last page with the same declaration that was in the 2013 application. (ECF No. 78-7 at 7). Plaintiff again renewed the policy for a year beginning in October of 2015. (ECF No. 78-1 at 4).

On September 14, 2016, Ana Morales, a worker for R&P, was working at the Lexus of Silver Spring dealership, Master's work site, and operated a vehicle that struck defendant Matthew Anders. (ECF Nos. 80-3, 77-3 at 19–20). At the time, defendant Main Street insured Master. (ECF No. 80-4 at 1). Main Street denied coverage for this claim because "[Ms. Morales] was temporarily helping [Master] by working at the Lexus of Silver Spring dealership" and therefore did not qualify as an insured under Master's policy. Id. R&P also submitted a claim to plaintiff for this incident, and plaintiff conducted an investigation. (ECF No. 78-12).

On December 1, 2016, plaintiff rescinded R&P's insurance policy based on material misrepresentations it found in R&P's application. (ECF No. 78-14 at 1). Specifically, plaintiff stated that Mrs. Tamaris failed to disclose her ownership interest in Master and control over its operations and that Ms. Tamaris failed to list all owners, employees, and drivers. (ECF No. 78-14 at 1–2). Plaintiff alleges that these facts were material to plaintiff's acceptance of the risk of covering R&P's garage operations and that plaintiff relied upon these material misrepresentations in issuing the policy. (ECF No. 42 at 6–7). Plaintiff further alleges that, had R&P accurately and completely disclosed this information, plaintiff would not have issued the policy. (ECF No. 42 at 8). Plaintiff now seeks a declaration that this policy is void *ab initio*. (ECF No. 42 at 3).

Anders moved for summary judgment on May 4, 2018, and argued that (1) there was no material misrepresentation when R&P answered that they did not have any interest in or operate

4

any other business; (2) there was no material misrepresentation when R&P listed Rose Tamaris only owner, employee, or driver; and (3) if there was a misrepresentation, the policy cannot be voided *ab initio* under Maryland law. (ECF No. 77-1 at 5). Defendants R&P, Master, and Rose Tamaris jointly moved for summary judgment on May 4, 2018, and claimed that (1) Master and Rose Tamaris are entitled to summary judgment as a matter of law because they are not parties to the insurance contract; (2) R&P did not make any material misrepresentations because it did not own any other businesses and did not have any employees; and (3) plaintiff waived any right to rescind the policy because it knew or should have known that R&P used workers that it characterized as "independent contractors" after plaintiff investigated and paid a claim in July of 2015. (ECF No. 78 at 1–4). Finally, Defendant Main Street joined the R&P group's Motion for Summary Judgment and filed an accompanying memorandum arguing that (1) there were no misrepresentations on the policy applications and that, even if there were misrepresentations, (2) the policy could not be voided *ab initio* under Maryland law. (ECF No. 79-1 at 1, 7).

On May 18, 2018, plaintiff moved for summary judgment and opposed defendants' motions. (ECF No. 80). Plaintiff argued that (1) it properly rescinded the policy based on the material misrepresentations regarding Mrs. Tamaris' ownership and control over other businesses and the size of her workforce; (2) it issued the policy in reliance on these material misrepresentations; and (3) the policy can be voided *ab initio* under Maryland law. (ECF No. 80-1 at 13, 19, 22).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the nonmoving party has the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315–16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or nonmoving party, but considers whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the nonmoving party, however, is insufficient

6

to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the nonmoving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299–300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the nonmoving party. Anderson, 477 U.S. at 252.

### III. DISCUSSION

#### A. Joinder of Rose Tamaris and Master Systems, Inc.

At the outset, the R&P group argues that Rose Tamaris and Master are entitled to summary judgment as a matter of law because they are not parties to the contract between plaintiff and R&P. (ECF No. 78-1 at 14). The R&P group argues that Master and Mrs. Tamaris have no relationship with plaintiff, that Mrs. Tamaris signed the application only on R&P's behalf, and that plaintiff may not seek to assert rights or obligations regarding either party. (ECF No. 78-1 at 4–5). In response, plaintiff argues that it properly joined all parties who may assert an interest in the outcome of the case to allow them an opportunity to be heard pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. (ECF No. 80-1 at 4). Specifically, Mrs. Tamaris sought coverage from plaintiff for claims arising out of Ms. Morales' work done for Master. Id. Accordingly, both Mrs. Tamaris and Master have an interest in the outcome of the proceeding and were properly joined. The R&P group's motion for summary judgment is therefore denied on this issue.

#### B. Material Misrepresentation of Ownership Interest

To obtain a declaration that the insurance policy is void *ab initio*, plaintiff must establish that it "issued a policy in reliance on a material misrepresentation in the application." Scottsdale Ins. Co. v. Nat'l Ctr. on Insts. & Alts., Inc., No. WDQ-04-2356, 2005 WL 1367079, at *2 (D.

7

Md. June 7, 2005) (citing N. Am. Specialty Ins. Co. v. Savage, 977 F. Supp. 725, 728 (D. Md. 1997)). Plaintiff must therefore establish that (1) R&P made a misrepresentation when applying for insurance and (2) that "the misrepresentation was material to the risk assumed by the insurer." Id. (citing Fitzgerald v. Franklin Life Ins. Co., 465 F. Supp. 527, 534 (D. Md. 1979)).

Plaintiff argues that Mrs. Tamaris materially misrepresented her ownership interest in East Coast and Master when she checked the "No" box in response to the question "Do you have an ownership interest in or operate any other business?" (ECF No. 80-1 at 6). Defendants argue that the word "you" in this question refers to R&P, which does not have any ownership interests in other businesses, so there was no material misrepresentation. (ECF Nos. 77-1 at 10, 78-1 at 15). The primary issue in dispute is therefore whether Mrs. Tamaris filled out the insurance application in her personal capacity or as an agent of R&P. The parties agree that the terms of the application are given "their customary, ordinary, and accepted meaning." Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd., 843 F.3d 133, 137 (4th Cir. 2016). "A policy term 'is not ambiguous simply because it is general in nature or undefined by the policy.'" Id. at 138 (quoting Walker v. Fireman's Fund Ins. Co., 505 A.2d 884, 886 (Md. Ct. Spec. App. 1986)). Rather, a term is ambiguous if, "to a reasonably prudent person, the term is susceptible to more than one meaning." Id. (quoting Connors v. Gov't Emps. Ins. Co., 113 A.3d 595, 603 (2015)). "If the application form prepared by the insurance company is ambiguous, it must be construed in a manner favorable to the policyholder." Fitzgerald v. Franklin Life Ins. Co., 465 F. Supp. 527, 535 (D. Md. 1979) (citing Peoples Life Ins. Co. v. Jerrell, 318 A.2d 519, 522 (Md. 1974)). In determining whether a misrepresentation occurred, the court "may consider whether the question directed to the insured was reasonably designed to elicit information material to the risk." Id.

Plaintiff argues that the term "applicant" is unambiguous and that a layperson reading the application would understand that Mrs. Tamaris was the applicant. (ECF No. 80-1 at 14, 16). Plaintiff further claims that, by signing in her personal capacity, Mrs. Tamaris failed to disclose any ownership interest in East Coast and Master. Id. To support this reading, plaintiff notes that Mrs. Tamaris placed her own name on the line for "Applicant's Printed Name" and that she did not indicate that she was signing in anything other than a personal capacity. (ECF No. 80-1 at 14–15). Plaintiff also states that Mrs. Tamaris described her own experience as an "Auto Detailer doing this type work for Past 5+ Years." (ECF No. 80-1 at 15). Plaintiff argues that the application indicates that it is directed to the individual signing it by the inclusion of oaths such as "I declare to the best of my knowledge that the statements herein are true and no material facts have been suppressed or misstated." (ECF No. 80-1 at 16). Finally, plaintiff claims that it is inconsistent to read the "you" in the question "Do you have an ownership interest in or operate any other business?" to mean R&P.[1] (ECF No. 80-1 at 17).

Defendants argue that the term "applicant" is unambiguous, that it refers to R&P, and that Mrs. Tamaris signed the application as R&P's agent. (ECF Nos. 77-1 at 10, 78-1 at 15). To support this position, defendants note that, under "Applicant Information," R&P was named under "Business Trade Name," R&P's business address was listed, and a box was checked to identify the business entity as an LLC. (ECF No. 77-1 at 10). Defendants also note that the insurance was ultimately issued to R&P. Id. In response to plaintiff's argument, defendants claim that Mrs. Tamaris only mentioned her 5+ years of personal experience in response to a question that asked about prior experience and specialized training or certificates if the business was less than three years old. (ECF No. 78-1 at 21). Finally, defendants argue that,

---

[1] Subpart c of that same question asks "What is the relationship between the business indicated in question a) and the business we are being asked to insure?" (ECF No. 80-1 at 17). If "you" referred to R&P, plaintiff argues, subpart c would merely ask "What is your relationship with the business indicated in question a)?" Id.

9

alternatively, the term "applicant" is ambiguous and should be construed against plaintiff, who is the party that drafted the application. (ECF No. 83 at 7, 9).

Defendants also cite to Jeb Stuart Auction Services, LLC v. West American Insurance Co., 122 F. Supp. 3d 479 (W.D. Va. 2015) to support their argument. Although Jeb Stuart is not controlling, it is persuasive. In Jeb Stuart Auction Services, LLC, the court found that when Mr. Hiatt, plaintiff's sole owner, signed an insurance application, he signed only in a representative capacity. Id. at 483. The court held that the term "applicant" unambiguously referred only to plaintiff, the party seeking to purchase insurance. Id. at 486. To support this conclusion, the court noted that only Jeb Stuart was listed under the heading "Applicant Information – Name," that the policy was issued to Jeb Stuart, that any payouts would go to Jeb Stuart, and only Jeb Stuart could sue to enforce the policy. Id. at 483. The court also looked to the dictionary definition of "applicant," one who requests or applies for something, which there referred to Jeb Stuart. Id. at 484. The defendant argued that the question regarding criminal convictions was clearly aimed at the members of the LLC, as the LLC acts only through them, but the court found that such a rationale would erode the meaning of the limited liability structure. Id. The court similarly rejected the defendant's argument that applying the question to the LLC renders it meaningless, as LLCs cannot commit arson, as the application was written for both individuals and corporations. Id. at 485.

I am persuaded by the reasoning of the court in Jeb Stuart Auction Services, LLC and find that Mrs. Tamaris signed in her representative capacity and therefore did not fail to disclose her interests. The question on the application at issue here was not reasonably designed to elicit the information that plaintiff sought, the ownership interests of Mrs. Tamaris, but rather asked only about the interests of the applicant, R&P. Accordingly, defendants Anders, Master, and the

R&P group's motions for summary judgment are granted on this issue, and plaintiff's motion for summary judgment on this issue is denied.

### C. Material Misrepresentation of Number of Employees

Plaintiff argues next that R&P failed to disclose the size of R&P's workforce by only listing Rose Tamaris when directed to "list ALL Owners, Employees, and Drivers" on the application. (ECF Nos. 80-1 at 3, 80-6 at 3). Defendants argue that R&P's workers were independent contractors, not employees. (ECF No. 78-1 at 5). They further argue that the term "employee" is not defined in the insurance application and is thus construed from the perspective of a reasonable person in Mrs. Tamaris' position, and that such a reasonable person would have understood the term "employee" to exclude "independent contractors." (ECF No. 78-1 at 3). Defendants argue that Mrs. Tamaris classified her workers as independent contractors because they were paid by the number of vehicles serviced, or by the "piece," as opposed to Master's employees, who were paid by the hour. (ECF Nos. 78-1 at 5, 77-1 at 15). Alternatively, defendants argue that "employee" is ambiguous and should therefore be construed against the drafter of the application, plaintiff. (ECF No. 78-1 at 4).

The terms of the application are given "their customary, ordinary, and accepted meaning." Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd., 843 F.3d 133, 137 (4th Cir. 2016). R&P argues that its workers are independent contractors and that the ordinary usage of the term "employees" does not include independent contractors. (ECF No. 78-1 at 3). "[S]uch subjective beliefs, however, are not relevant to the question of whether an employer-employee relationship exists." Nationwide Prop. & Cas. Ins. Co. v. Dorsey, 247 F. Supp. 3d 683, 695 (citing Whitehead v. Safway Steel Prods., 497 A.2d 803, 812 (Md. 1985)). Additionally, Mrs. Tamaris' subjective belief that R&P's workers were independent contractors would not excuse

11

her failure to disclose the number of employees, as "[a]n insurer may avoid a policy issued in reliance on a material misrepresentation, regardless of whether the misrepresentation was made intentionally, or through mistake and in good faith." Scottsdale Ins. Co. v. Nat'l Ctr. on Insts. & Alts., Inc., No. WDQ-04-2356, 2005 WL 1367079 at *3 (D. Md. June 7, 2005) (citing Fitzgerald v. Franklin Life Ins. Co., 465 F. Supp. 527, 534 (D. Md. 1979)).

The Fourth Circuit Court of Appeals has previously held that the undefined insurance policy term "employee" is unambiguous and that "the common and ordinary meaning of 'employee' incorporates the right-to-control test used to determine the existence of a master-servant relationship." Interstate Fire & Cas. Co., 843 F.3d at 139. The court noted that Maryland considers five factors when determining whether an employer/employee relationship exists between two parties: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." Id. (quoting Whitehead, 497 A.2d at 808–09). Of these factors, "the factor of control stands out as the most important" and is the "decisive" test. Whitehead, 497 A.2d at 809 (quoting Mackall v. Zayre Corp., 443 A.2d 98, 103 (Md. 1982)).

The existence of an employer-employee relationship is typically a question of fact for the jury. Id. at 808 (citing Mackall, 443 A.2d at 103). "When, however, the existence of the relationship is undisputed, or the evidence on the issue is uncontroverted, unless conflicting inferences can be drawn from that evidence, the trial court is entitled to treat the matter as a question of law." Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio, 697 A.2d 885, 893 (Md. 1997) (citing Whitehead, 497 A.2d at 808)). Here, four of the factors do not appear to be in dispute, and weigh in favor of finding the workers as employees. R&P had the ability to both hire and

fire employees, and the workers were paid wages by R&P[2]. (ECF No. 77-3 at 11, 13). R&P's workers performed work that was part of the regular business of R&P, auto detailing.[3] Although the parties are in dispute regarding the last factor, control, the evidence on the issue is uncontroverted.

The remaining factor, the power to control the employees' conduct, is present if "the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done." Nationwide Prop. & Cas. Ins. Co., 247 F. Supp. 3d at 689 (quoting Whitehead, 497 A.2d at 809). "If the right to control is not present, and instead, the worker in question is to perform the work according to his own means and methods free from control of his employer in all details connected with the performance of the work except as to its product or result, then the worker is considered to be an independent contractor." Id. at 690 (quoting Baker, Watts & Co. v. Miles & Stockbridge, 620 A.2d 356, 373 (Md. 1993)). In Whitehead, the Maryland Court of Appeals found that the control exercised by defendant over plaintiff clearly established an employer/employee relationship when "[defendant] instructed [plaintiff] on the task to be performed, supervised his work, and was free to reassign him to any other duties that warranted attention. If [plaintiff's] work was unsatisfactory, [defendant] was free to dismiss him and request an additional worker. . . . [Defendant] actually contributed to the insurance protection of one of its employees." 497 A.2d at 809.

In Nationwide Property & Casualty Insurance Co., the court found that an individual, Mr. Gaines, was an employee of a power washing company, Washrite, under Maryland's five-factor test when "Washrite had significant control over Mr. Gaines in the course of his work for the

---

[2] R&P's workers submitted invoices to Mrs. Tamaris, who would then pay them. (ECF No. 77-3 at 8). Mrs. Tamaris would then write up those invoices up on one of her own and bring her invoice to the dealership to be paid. (ECF No. 77-3 at 14). This fact is of no consequence, however, as it was R&P who paid the workers, not the dealership.
[3] On the insurance application at issue, R&P described its operations as "auto detailer." (ECF No. 78-7 at 1).

13

company." 247 F. Supp. 3d at 693. The court noted that "Mr. Gaines did not select which jobs he would perform on behalf of Washrite. Instead . . . Mr. Gaines would be given a "routing slip" notifying him what job he was assigned to that day and the location of that job. Accordingly, Mr. Gaines's work schedule varied according to the demands of Washrite customers and the needs of Washrite itself." Id. at 691. Mr. Gaines "was told what vehicle to wash, what co-workers to use, when and where to wash the vehicle, what his appearance should be on the job, what tools to use and what paperwork needed to accompany the finished job." Id. at 694. While Mr. Gaines had autonomy in how he actually washed the cars, this "did not mean that Washrite did not retain the right to control him," particularly given that "there is no evidence that car washing was a highly technical procedure requiring strict adherence to a formal method or routine." Id.

Similarly, here, R&P directed workers to locations where work was available. (ECF No. 77-3 at 12). R&P employed supervisors to "look after the company and make sure things – people were doing their jobs." (ECF No. 77-4 at 10–11). While R&P's workers were given autonomy as to how to detail the cars, the work was not highly technical[4], and the workers were told what vehicles to detail, when and where to detail the vehicles, and what invoices were necessary to obtain payment for their work. (See ECF No. 77-3 at 12–15). Mr. Tamaris stated that R&P's workers performed the same work as Master workers, who were paid hourly and considered employees. (See ECF No. 77-4 at 7). Mrs. Tamaris testified at her deposition that the work of the three entities was "the same" and that she did not really know why she had three separate entities. (ECF Nos. 80-1 at 6, 80-7 at 3–4). Mr. Tamaris stated that the only way that the work of R&P differed from Master was "in what the dealership is calling for work

---

[4] When asked about training R&P's workers in his deposition, Mr. Tamaris stated that "you tell somebody to vacuum a car. Like, you know, I can teach Fido pretty much to vacuum any car. That type of training. I mean, it's not like – you know, we're not painting skyscrapers here." (ECF No. 77-4 at 10).

14

performance." (ECF No. 77-4 at 5). Additionally, Mr. Tamaris stated that employees would occasionally go from one location to another depending on the flux of work. (ECF Nos. 80-1 at 7, 80-7 at 7). Finally, R&P obtained worker's compensation insurance for 43 workers who did not have their own policies on October 15, 2015, the day before R&P completed the renewal application for the insurance at issue here. (ECF Nos. 80-10 at 2, 4, 80-6 at 7).

Based on this uncontroverted evidence, there is no genuine issue of material fact as to whether R&P misrepresented the number of "owners, employees, and drivers" by only listing Rose Tamaris. The evidence clearly establishes that R&P's workers were employees who should have been disclosed on the insurance application and the fact that R&P erroneously labeled them as independent contractors does not change that result. Accordingly, I find as a matter of law that R&P's failure to disclose the size of its workforce was a misrepresentation that, if material, would allow a declaration that the policy is void *ab initio*.

Defendants do not appear to dispute that this misrepresentation is material. Indeed, plaintiff has provided an uncontested affidavit from its underwriting department stating that plaintiff would not have issued the policy absent these misrepresentations. <u>Dominant Invs. 113, LLC v. U.S. Liab. Ins. Co.</u>, 247 F. Supp. 3d 696, 703 (D. Md. 2017) ("[A]n uncontested affidavit from an insurer's underwriting department that a policy would not have been issued if the insurer had known of the applicant's misrepresentation is 'adequate to find materiality as a matter of law.'") (quoting <u>Essex Ins. Co. v. Hoffman</u>, 168 F. Supp. 2d 547, 55 (D. Md. 2001)). It is clear that the misrepresentation was material here, as plaintiff was not able to appreciate the scope of the operation that it was being asked to insure when Rose Tamaris was listed as the sole employee, owner, or driver, despite the fact that R&P actually employed 49 additional workers with a payroll of over half a million dollars. (ECF No. 80-10 at 2). Accordingly, defendants'

motions for summary judgment on these issues are denied, and plaintiff's motion for summary judgment on this issue is granted.

## D. Right to Void *Ab Initio* Under Maryland Law

Defendants Anders and Main Street also seek summary judgment on the grounds that, even if there was a material misrepresentation, the policy cannot be voided *ab initio* under Maryland law. (ECF Nos. 77-1 at 16, 79-1 at 7). To support this argument, defendants cite to Van Horn v. Atlantic Mutual Insurance Co., 641 A.2d 195 (Md. 1994), a case in which the Maryland Court of Appeals held that "an insurer's common law right to void *ab initio* an automobile insurance policy, when the applicant had made a material misrepresentation in the application for the policy, has been statutorily abrogated with regard to claims of persons not involved in making the misrepresentation." Id. at 199–200. Defendant Anders argues that the language of the liability coverage portion of R&P's insurance policy is "virtually identical to insuring language in the standard automobile policy," so Van Horn applies to this insurance policy. (ECF No. 77-1 at 17). Plaintiff argues that this limitation does not apply to commercial liability insurance policies such as the one granted by plaintiff. (ECF No. 80-1 at 22).

This court has previously held that the right to void a contract is only abrogated for statutorily mandated automobile insurance. N. Am. Specialty Ins. Co. v. Savage, 977 F. Supp. 725, 730 (D. Md. 1997). As noted by plaintiff, Maryland law states that "[t]he owner of a motor vehicle that is required to be registered in this State shall maintain the required security for the vehicle during the registration period." MD. TRANSP. CODE ANN. § 17-104(b). Here, R&P did not apply for insurance on cars that it owned, but rather, insurance for R&P's work detailing the cars of others. Accordingly, R&P's insurance was not statutorily mandated, and Van Horn does

not apply. Defendants Anders and Main Streets' motions for summary judgment on these issues are denied, and plaintiff's motion for summary judgment on this issue is granted.

### E. Waiver

Finally, R&P argues that it is entitled to summary judgment because plaintiff waived its right to rescind the policy. (ECF No. 78-1 at 4). R&P claims plaintiff knew or should have known of R&P's workforce practices after plaintiff investigated and paid a claim in July 2015 involving damage to a customer vehicle operated by an R&P worker. Id. On the renewal application, in response to a question regarding prior claims history, the box for "Losses reported in the last 36 months" was checked and "Tristate[5] has all information" was written in the space provided. (ECF No. 78-7 at 2). R&P argues that plaintiff was therefore "armed with the same facts about which it now complains" when it issued the 2015–2016 policy to R&P. (ECF No. 78-1 at 26). In response, plaintiff claims that the only evidence that R&P has presented that plaintiff was aware of these facts is a "terse affidavit of an insurance broker who cannot competently testify to Colony's knowledge" and that R&P cannot show that plaintiff knew of R&P's workforce. (ECF No. 86 at 2).

An insurer can be held to have waived its right to rescind a policy based on a material misrepresentation "if the insurer can be shown to have known that the insured's answers were false and nevertheless made payment on the policy." Fitzgerald v. Franklin Life Ins. Co., 465 F. Supp. 527, 535 (D. Md. 1979). Here, the issue is whether plaintiff had actual or constructive knowledge that R&P had more than one employee, owner, or driver. This court has held that, generally, "insurers do not have a duty to investigate insurance applicants and are entitled to believe what an applicant claims to be true." N. Am. Specialty Ins. Co. v. Savage, 977 F. Supp.

---

[5] Tristate is the insurance brokerage firm through which the application for insurance was processed. (ECF Nos. 78-1 at 7, 78-8 at 4).

17

725, 731 (D. Md. 1997) (citing Clemons v. Am. Cas. Co., 841 F. Supp. 160, 167 (D. Md. 1993)). The insurer does, however, have a duty to investigate "[w]here an application contains responses that should have put the insurer on notice." Id. "'The duty to investigate . . . only exists in extraordinary situations when the insurer is on notice that some type of investigation is necessary' because 'a considerable amount of suspicious information' is presented to the insured." Id. (quoting Clemons, 841 F. Supp. at 167).

To support its argument that plaintiff was aware of these facts, R&P argues that "an insurer is charged with knowledge of facts which it knows or which with reasonable diligence by means of inquiry or investigation it could have discovered." Med. Mut. Liab. Ins. Soc'y of Md. v. Miller, 451 A.2d 930, 935 (Md. Ct. Spec. App. 1982). In Medical Mutual Liability Insurance Society of Maryland, the Court of Special Appeals held that an insurance company was estopped from disclaiming liability based on an alleged breach of the insurance policy's cooperation clause when it was clearly informed of the breach in a memorandum eleven months prior to its disclaimer of liability. Id. Here, however, the defense has provided no evidence that plaintiff possessed such information other than defendants' own conclusory assertion that plaintiff settled "a nearly identical claim" as the underlying claim at issue now and the affidavit of Jon Christiana, who does not have personal knowledge of whether plaintiff was aware of these facts. (ECF Nos. 83 at 1, 86 at 2). The bald reference on the application to a checked box and a note that "Tristate has all information" reveals nothing about what plaintiff knew or should have known. In sum, defendants have failed to offer any admissible evidence to create a genuine issue of material fact on the issue of whether plaintiff waived its right to rescind the policy. The R&P group's motion for summary judgment is denied on this issue.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's Motion (ECF No. 80) is GRANTED in part and DENIED in part and Anders' Motion (ECF No. 77), the R&P Group's Motion (ECF No. 78), and Master's Motion (ECF No. 79) are GRANTED in part and DENIED in part. Accordingly, it is hereby declared that plaintiff's policy is void *ab initio*. A separate order will be issued.

Date: November 16, 2018                    /s/
                                           Beth P. Gesner
                                           Chief United States Magistrate Judge